# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A. GARCIA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>RUBEN GARCIA, et al.,<br><br>　　　　　Defendants. | Case No. 1:17-cv-01313-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF Nos. 10, 11)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff Marco A. Garcia ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The events in the complaint are alleged to have occurred while Plaintiff was housed in the Kings County Jail.

On May 31, 2018, the Court screened Plaintiff's complaint and found that Plaintiff stated a cognizable claim for excessive force in violation of the Fourteenth Amendment against Defendants Garcia and Bursiaga, but failed to state any other cognizable claims against any other defendants. The Court ordered Plaintiff to either file a first amended complaint or notify the Court of his willingness to proceed only on the cognizable claims. (ECF No. 10.) On June 29, 2018, Plaintiff notified the Court of his willingness to proceed on the cognizable claims identified

1

by the Court. (ECF No. 11.)

**II.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**III.    Allegations in Complaint**

Plaintiff is currently housed at Wasco State Prison. The events in the complaint are alleged to have occurred while Plaintiff was housed in the Kings County Jail. Plaintiff names the following defendants: (1) Officer Ruben Garcia; (2) Deputy Blake Bursiaga; (3) ISU Sergeant Collier; (4) Deputy Fowler; (5) Sergeant Zaid Germen; and (6) Appeals Coordinator Olivera.

Claim I

In Claim I, Plaintiff alleges that on April 13, 2017, he was in his cell when a raid occurred and he was asked to cuff up. Plaintiff's cell door was opened and he was escorted to a hallway.

Plaintiff was patted down and instructed to turn around.  When he did, Defendant Garcia choked him, yelled that Plaintiff had swallowed something and pushed Plaintiff's neck to the window.  Plaintiff was in a daze and saw a fist coming at him, which he believed to be that of Defendant Bursiaga.  Plaintiff was struck in the forehead.  He was struck again by one of the defendants, spun around, pushed into the window, and then slammed on his head.  Plaintiff heard Defendant Bursiaga yell, "Your [expletive] stupid Garcia."  (ECF No. 1 at 5.)  Plaintiff asserts that this was all done while he was in restraints and unable to resist.  He was then placed in leg irons and shackles and placed in holding cell for more than 5 hours.

Plaintiff alleges that he sustained both physical and emotional injuries as a result of the unprovoked beating and unnecessary use of force in violation of the Eighth Amendment, including a lump to the back of his head, three lumps to his forehead, severe headaches, dizziness and blurry vision.  Plaintiff further claims that charges of assault and battery were filed against him, but were later dropped at a preliminary hearing.

Claim II

In Claim II, Plaintiff alleges that he was a pretrial detainee at the time of the unprovoked assault.  Plaintiff alleges that after the assault, Defendant Bursiaga and Garcia placed him in a small, dirty holding cell.  Although the cell had sanitary facilities, Plaintiff was unable to properly use them because he was in full restraints.  Plaintiff used the emergency intercom and expressed the need to use the facilities.  Plaintiff was told that some would come and talk to him.  When Defendant Fowler walked past the cell, Plaintiff asked Defendant if he could take the cuffs off so that Plaintiff could use the bathroom.  Defendant Fowler looked at Plaintiff, smiled, said, "Nope," and walked away.  Plaintiff tried to call him back, but Defendant Fowler ignored him.  Plaintiff then pushed the intercom again and advised that he needed to use the bathroom, but could not go because of the cuffs and the inability to take his jumpsuit off.  Plaintiff also reported that an officer walked past, but did not want to help.  He was told to ask the next passing officer.

Approximately 20 minutes passed and Plaintiff felt pressure in his stomach and the need to use the bathroom.  He pushed the intercom again, but no one answered.  Plaintiff noticed Defendant Fowler walk past his cell.  Plaintiff knocked to get his attention and asked if could take

his cuffs off so that he could use the bathroom. Defendant Fowler told him no and walked away. Plaintiff tried to call to him again, but Defendant Fowler told him to shut up and it was not his problem. Because Plaintiff was in desperate need to use the restroom, he pulled his hand out of the cuff so that he could use the sanitation properly. Plaintiff's hand was red and swollen. After a couple of minutes, Defendants Collier and Germen came into the holding cell. Plaintiff told them that his hand was swollen because he had to use the bathroom and had been asking for an hour to be uncuffed to use the bathroom. Defendant Germen grabbed Plaintiff, recuffed him and his Miranda rights were read to him by Defendant Collier. Plaintiff invoked his right to remain silent. Defendant Collier then left the area.

Defendant Germen began to talk to Plaintiff and told him that he did not know whether to place him in Ad Seg or not. Defendant Germen asked Plaintiff what happened. Plaintiff told him that he guessed they were saying that Plaintiff kicked someone, but he did not. All Plaintiff remembered was being choked by Defendant Garcia, spun around and slammed everywhere. Plaintiff did not really recall anything because it happened so fast and he was choking. Defendant Germen said it might have happened as Plaintiff was being slammed to the ground. Plaintiff would be placed in segregation until Defendant German checked the video and decided what to do. Plaintiff asked if he could be unrestrained, but was denied.

Intermittently throughout the day Defendant Fowler walked by and Plaintiff asked if he could be unrestrained in order to relieve himself and because the cuffs were on too tight, causing his hands to swell and turn red. Plaintiff was denied each time.

Defendant Collier came into the holding cell to take pictures of Plaintiff's injuries. Plaintiff requested to be uncuffed and asked how much longer he was to be in the holding cell. Defendant Collier said he could not uncuff Plaintiff and did not know how long Plaintiff was to be in the cell. It was at the discretion of Defendant Germen. Defendant Collier asked if Plaintiff would like medical attention. Plaintiff replied that he did, and Defendant Collier said he would be right back. Defendant Collier never returned. Plaintiff was in the cell from 7:50 to 4:30 p.m without being fed lunch. He was taken to the Security Housing Unit awaiting a write up and was not allowed to leave his cell.

Plaintiff alleges that he was injured by Defendants' failure to loosen the restraints around his wrist once he made them aware of his injuries resulting from him not being unrestrained in order to use the sanitation facilities. Plaintiff asserts that their inactions cause him to resort to drastic measures to pull his hand out of the cuffs so he could use the facilities. Plaintiff further alleges that Defendant Germen' action of recuffing his swollen wrist/hand caused the deprivation of his rights, including denial of equal protection and deliberate indifference.

### Claim III

On April 14, 2017, Deputy Alejo approached Plaintiff's cell in the Security Housing Unit. Deputy Alejo informed Plaintiff that he had a write-up for what happened on April 13, 2017. He also informed Plaintiff that he was not a hearing officer, that he was only there to serve him with the write-up, and that there was no disciplinary hearing, but Plaintiff could appeal. Plaintiff informed Deputy Alejo that he wished to appeal because he never assaulted anyone. Deputy Alejo told Plaintiff that he was not the one he needed to talk to and explained to him about waiving the 24-hour waiting period, which would give him 24 hours to prepare a defense. Plaintiff did not understand and asked if he waived it whether he would be seen the following day. Defendant Alejo said it did and Plaintiff signed off on the write-up. He was not supplied with a copy for his records. Defendant Alejo said he would receive a copy during mail call.

Later that day, Defendant Olivera came to Plaintiff's cell door, laughed at him and asked him what he did. Plaintiff relayed that he did not do anything and the cops choked him and beat him. Defendant Olivera said he was there for the appeal, but was going to take 30 days from Plaintiff because his higher ups told him to do so. Plaintiff asked if he could keep his visits, but Defendant Olvera laughed and said no. Plaintiff then told Defendant Olivera that the write-up said he assaulted staff, but he did not. Plaintiff explained what happened, and said that he never slapped anyone's hand or kicked anyone, and did not know why they would say that. Defendant Olivera said that he did not know either, but that he would have to go with the higher ups on this one. Plaintiff asked if Defendant Olivera could show him the video and point out where and when he did it. Defendant Olivera told Plaintiff that he could not show him the video, but he was going to look at it to see if Plaintiff was telling the truth. He also said it was not going to change

5

anything. Defendant Olivera then left Plaintiff's cell. Plaintiff received a copy of the write-up after he left. Plaintiff filed a grievance on this and other issues, but nothing was ever done.

Plaintiff asserts that he was deprived of his liberty, confined in a small cell without the ability to exercise, watch television, associate with other prisoners, attend outdoor recreation in a setting with the ability to engage in sports and other group recreational activities, have visits or use the phone. Plaintiff asserts that he was denied exercise for a period of thirty days in violation of his due process rights.

As relief, Plaintiff seeks compensatory and punitive damages, along with expungement of the disciplinary conviction from his record.

**IV. Discussion**

    **A. Excessive Force**

In Claim I, Plaintiff alleges excessive force in violation of the Eighth Amendment against Defendants Garcia and Bursiaga. However, the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, protects a pretrial detainee from the use of excessive force that amounts to punishment. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). To state an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id.

At the pleading stage, Plaintiff has stated a cognizable excessive force claim in violation of the Fourteenth Amendment against Defendants Garcia and Bursiaga.

    **B. Conditions of Confinement**

        1. <u>Toilet Access</u>

In order to proceed on a claim for denial of restroom access in violation of the Fourteenth Amendment, a prisoner must plead as follows:

> (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.

6

Castro v. Cty. of Los Angeles, 833 F.3d at 1071. With respect to the third element, the defendant's conduct must be "objectively unreasonable." Id. (citing Kingsley, 135 S. Ct. at 2473). This is a standard that is something "more than negligence but less than subjective intent—something akin to reckless disregard." Castro, 833 F.3d at 1071.

Courts in this and other districts have held that a temporary delay in allowing a prisoner to use a restroom fall short of establishing an Eighth Amendment claim. See, e.g., von Koenigsberg-Tyrvaldssen v. Kohut, 2017 WL 1277457, at *9–10 (D. Mont. Jan. 20, 2017) (isolated incidents of not having immediate access to a bathroom were insufficient to state a federal constitutional claim; providing summary of similar cases); Samu v. Stewart, 2011 WL 4074781, at *2 (W.D. Mich. Sept. 13, 2011) (finding isolated and temporary refusal or delay in allowing a prisoner to use the bathroom did not support an Eighth Amendment claim); see also Hartsfield v. Vidor, 199 F.3d 305, 309–10 (6th Cir. 1999) (allegations that prisoner was denied use of a toilet for two separate 8-hour periods over two days did not state a claim for violation of the Eighth Amendment); Gerst v. Arpaio, 2012 WL 3228838, at *4 (D. Ariz., Aug. 6, 2012) ("[a]s to Plaintiff's claim that he was deprived of air conditioning, water, and the use of a bathroom for three hours, he has alleged a temporary inconvenience, not a "sufficiently serious" deprivation"); Saenz v. Reeves, 2012 WL 4049975, at *14 (E.D. Cal., Sept.13, 2012) ("denying Plaintiff access to a toilet and water for five and one half hours on one occasion and four and one half hours on a separate occasion, while he was kept in a holding cell, are not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment"). While these cases were decided under the Eighth Amendment, they inform the Court's analysis under the Fourteenth Amendment.

Here, Plaintiff's allegations that he was denied the use of a restroom for an hour while in the holding cell before he relieved himself are insufficient to state a claim upon which relief may granted. Plaintiff does not allege that the one-hour delay placed him in substantial risk of suffering serious harm or actually caused him injury, other than the self-inflicted injury when removing his wrist from the cuff. Further, Plaintiff's suggestion that he was in the holding cell for approximately 8½ hours without restroom access or food is insufficient to state a claim.

Plaintiff has not adequately alleged that any of the defendants made an intentional decision or that a reasonable officer in the circumstances would have appreciated any risk, much less a high degree risk, from a temporary deprivation of toilet access.

### 2. Lack of Exercise

In Claim III, Plaintiff asserts that his placement following the disciplinary write up resulted in a loss of exercise. The Court construes this as an assertion that he was denied outdoor exercise. "[T]he Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective." Pierce v. Cty. of Orange, 526 F.3d 1190, 1211–12 (9th Cir. 2008). "Determining what constitutes adequate exercise requires consideration of the physical characteristics of the cell and jail and the average length of stay of the inmates." Id.

Plaintiff's allegations are insufficient to support a claim regarding the denial of outdoor exercise. The Court cannot ascertain from the facts alleged where Plaintiff was housed and whether he was denied all exercise, denied outdoor exercise and/or denied only outdoor access. Further, there is no indication that Plaintiff suffered any negative medical effects from the purported denial of outdoor exercise.

### C. **Denial of Medical Care**

Plaintiff alleges that Defendant Germen's action of recuffing his swollen wrist/hand caused the deprivation of his rights, including denial of equal protection and deliberate indifference. Plaintiff also alleges that Defendant Collier failed to summon medical.

### 1. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by demonstrating that the defendant intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class, such as race. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

///

Where no suspect class or fundamental right is implicated, a plaintiff's equal protection claims are subject to a rational basis review. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); United States v. Juvenile Male, 670 F.3d 999, 1009 (9th Cir. 2012); Nelson v. City of Irvine, 143 F.3d 1196, 1205 (9th Cir. 1998) ("Unless a classification trammels fundamental personal rights or implicates a suspect classification, to meet constitutional challenge the law in question needs only some rational relation to a legitimate state interest."). In the prison context, the right to equal protection is viewed through a standard of reasonableness; that is, whether the actions of prison officials are "reasonably related to legitimate penological interests." Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Plaintiff has failed to establish that he is a member of a protected class or that he was otherwise discriminated against by Defendant Germen. Plaintiff's conclusory allegations that his Equal Protection rights have been violated by the denial of care for his wrist are not sufficient to state a cognizable claim.

### 2. Deliberate Indifference

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard. Gordon v. Cty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018), quoting Castro, 833 F.3d at 1070. "[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125. As noted above in the conditions of confinement claim, with respect to the third element, the defendant's conduct must be objectively unreasonable. Id. However, the mere lack of due care does not deprive an individual of life, liberty or property under the Fourteenth and,

9

thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id. (citation and internal quotation omitted).

Plaintiff's allegations are not sufficient to state a claim for a violation of the right to adequate medical care. At a minimum, Plaintiff does not indicate that he suffered any injuries at the hands of Defendant Germen by the recuffing of his wrist or even that there was a high degree of risk involved in the recuffing or the purported failure of either Defendant German or Collier to secure medical attention. Plaintiff merely asserts that he experienced swelling and redness in his hand, which he admits occurred after he removed his own wrist from the cuff.

### D.     Administrative Segregation

A pretrial detainee "may not be punished without a due process hearing." Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996). "[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." Id. Although Plaintiff suggests that he was denied a hearing, it is unclear from the facts alleged in the complaint whether Plaintiff was placed in disciplinary segregation or whether he may have waived any right to a hearing. Plaintiff's allegations are, at best, vague regarding his placement, the disciplinary write-up and related events surrounding that write-up. Further, Plaintiff's conclusory allegations that he generally suffered a number of indignities based on his housing assignment are not sufficient to support a due process claim.

### V.     Conclusion and Recommendation

Plaintiff's complaint states a cognizable claim for excessive force in violation of the Fourteenth Amendment against Defendants Garcia and Bursiaga, but fails to state any other cognizable claims.

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's complaint, filed October 2, 2017, (ECF No. 1), for excessive force in violation of the Fourteenth Amendment against Defendants Garcia and Bursiaga; and

2. All other claims and Defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 10, 2018**          /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE